UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RUFUS JOHNSON, et al. | CIVIL ACTION |
| VERSUS | NO: 19-12272 |
| CITY OF NEW ORLEANS | SECTION: T (3) |

### ORDER AND REASONS

Before the Court are Plaintiffs', Rufus Johnson and Sandra Lummer, Motion for Summary Judgment. R. Doc. 124. For the following reasons, the motion is **DENIED**.

### BACKGROUND

This is an alleged employment discrimination case. The plaintiffs are Rufus Johnson and Sandra "Sandy" Lummer ("Plaintiffs"). Johnson is a black male and Lummer is an older white female. R. Doc. 124-7 at ¶ 2, 4. Both were employed by the New Orleans Recreation Department ("NORD"), a division of the City of New Orleans ("the City"). R. Doc. 1.

1. **Factual History**

Plaintiffs allege NORD hired Johnson in April 2013, and he worked continuously for the department until September 2017 as a senior lifeguard, at which time he was forced to resign. R. Doc. 124-7 at ¶ 5. He returned in June 2018 and worked at NORD as a summer lifeguard until September 2018. *Id.* Lummer was hired as NORD Aquatics Director in the spring of 2018 and worked until August or September of 2018.[1] R. Doc. 135-2 at ¶ 7; R. Doc. 124-7 at ¶ 13. Plaintiffs

---

[1] The City contends Lummer was hired on May 23, 2018. Plaintiffs contend Lummer was hired in April 2018. The City contends Lummer was terminated on August 22, 2018. Lummer contends she was terminated in September 2018.

1

contend they are the victims of unlawful employment practices. However, Plaintiffs support their claim only through sworn declarations. *See* R. Docs. 124-4, 124-5.

Starting with Lummer, Plaintiffs claim she began to engage in a series of protected activities starting in June 2018. First, she allegedly discovered various sexual harassment complaints brought against Warren Matthews, a black male aquatics manager, by female NORD employees. *See* R. Doc. 124-7 at ¶ 11. Lummer contends these harassment allegations were not properly investigated as the complaining employees were allegedly terminated and then put on a do-not-rehire list without explanation by Chief Programming Officer ("CPO") Shonnda Smith. *Id.* Furthermore, Plaintiffs claim Lummer complained to Smith about alleged (1) mistreatment and discrimination leveled against "ZACK," a gay employee, (2) sexual exploitation of a minor child by Kevin Gibson, a senior lifeguard, and (3) substandard aquatics programing. *Id.* at ¶ 14.

As a result of Lummer's alleged complaints, Plaintiffs argue NORD retaliated against her. Lummer contends after she filed complaints to the HR department, she was stripped of her authority over other managers. *Id.* at ¶ 13-14. Next, she allegedly became victim of a conspiracy to ger her fired instigated by four, black, male aquatic managers whom she supervised, Kristopher Lewis, David Reed, Marques Green, and Warren Matthews (collectively, "the Managers"). *Id.* at ¶ 9. The Managers allegedly created a rumor that Lummer was racist and openly referred to her as "the female Hitler" and "racist white lady." *See id.* at ¶ 9, 11. She also maintains the Managers were insubordinate, eavesdropped and taped her meetings, and encouraged lifeguards to make false complaints against her. R. Doc. 124-4 at ¶¶ 13, 14, 23, 44, 65, 84. Lummer contends this conspiracy caused her to be fired by her supervisor, Maya Wyche, Interim CEO of the New Orleans Recreation Commission ("NORDC"), who along with CPO Smith was aware of the harassment

2

against her. R. Doc. 124-4 at ¶ 17.[2] Lummer alleges the stated reason for her termination, various personnel issues, was a pretext for race- and sex-based discrimination, as a white female, and in retaliation for making protected complaints. R. Doc. 124-4 at ¶¶ 13-14.

Johnson contends he complained about the discriminatory treatment of Lummer to Judena Boudreau, NORDC's Chief of Staff, sometime before July 2018. R. Doc. 124-7 at ¶ 7. After making complaints, Johnson alleges he too was subject to retaliatory acts. Johnson first maintains Matthews threatened to terminate him in July 2018 for insubordination. *Id.* at ¶ 11. Reed allegedly later offered Johnson a demoted year-round position, stating he "had to start at the bottom." *Id.* at ¶ 10. By the end of the summer, September 2018, Johnson contends he was excluded from permanent employment with NORD despite his qualifications, tenure, and experience. *Id.* at ¶ 9.

The City disputes Plaintiffs' accounts. For Johnson, the City claims he was not terminated but that his position as a summer lifeguard, a three-month position, expired. R. Doc. 135-2 at ¶ 3. The City also points to the uncontested allegation that NORD tried to interview Johnson for a year-round position in October 2018. R. Doc. 124-7 at ¶ 10; R. Doc. 135-2 at ¶ 5. Accordingly, the City contends Johnson's supervisors did not take any adverse employment action against him and denies Johnson made any complaints during his summer employment. R. Doc. 135-2 at ¶ 6.

As to Lummer, the City argues Lummer's behavior triggered her termination. The City first contends Lummer was subject to an initial one-year probationary period. *Id.* at ¶ 7. During this time, Lummer allegedly harassed the Managers, disrespected her supervisors, did not remedy a payroll issue, and made racially insensitive comments. These alleged statements include, "I [Lummer] know [my comments] hurts your [Matthews] feelings and I'm going to keep on doing

---

[2] NORDC provides administrative oversight for NORD.

3

it," a threat that she would "strangle the life out of" Lewis, and various racially-charged jokes that the Managers liked to "eat[] fried chicken and watermelon." *See* R. Docs. 135-5, 135-6, 135-9, 135-11. Interim CEO Wyche declared she decided to terminate Lummer because "she failed to lead effectively, made repeated disrespectful remarks toward her staff, treated staff disrespectfully, failed to heed coaching and counselling sessions, and failed to appropriately handle payroll discrepancies." R. Doc. 135-2 at ¶ 8. The same reasons are mentioned in Lummer's termination letter dated August 22, 2018. R. Doc. 135-4. The City also denies Lummer made any complaints, formal or informal, and claims NORD did not condone any harassment but did attempt to mediate personality conflicts between Lummer and the Managers. R. Doc. 135-2 at ¶ 10.

2. **Procedural Background**

The EEOC issued Johnson a right to sue letter on May 22, 2019. R. Doc. 1-1 at p. 1. On August 22, 2019, Plaintiffs sued the City and NORDC under the First and Fourteenth Amendments, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Louisiana Revised Statutes § 23:967, the Louisiana Whistleblower Statute, and § 23:332, the Louisiana Employment Discrimination Law ("LEDL"), LA. STAT. ANN. § 23:332(A)(1)–(2), for race and sex discrimination, hostile work environment, and retaliation. R. Doc. 1. Defendants moved to dismiss all claims. R. Doc. 13. The Court granted the defendants' motion. R. Doc. 24. The Court dismissed all claims against NORDC with prejudice because it is a City department not capable of being sued under state law and dismissed the remaining claims without prejudice with leave to amend. *Id.*

However, Plaintiffs did not independently file a timely amended complaint. Lummer instead filed a Motion for New Trial Pursuant to F.R.C.P. 59 or, in the Alternative, Motion for

4

Relief from Judgment/Order Pursuant to F.R.C.P. 60 on April 6, 2020. R. Doc. 28. But she did attach the amended complaint as an exhibit to this motion. R. Doc. 28-3. The Court denied Lummer's motion as procedurally improper. R. Doc. 40. After the motion was denied, Plaintiffs moved for leave to file a second amended complaint. R. Doc. 43. Magistrate Judge Douglas denied Plaintiffs' motion. R. Doc. 45. Plaintiffs appealed, the Court reversed, and Plaintiffs were allowed to file a second amended complaint. R. Doc. 48.

Plaintiffs' Second Amended Complaint (the "SAC") was filed on October 2, 2023. R. Doc. 49. Far from a model of clarity, the Court reads the SAC to assert the following claims: violations for race and sex discrimination as to Lummer, retaliation and hostile-work environment claims for both plaintiffs, all under Title VII, and Louisiana Whistleblower Statute claims for both Plaintiffs. *See* R. Docs. 1, 49. The hostile-work environment claims are also brought under the LEDL. *See* R. Doc. 49 at ¶¶ 10, 12, 13. The City answered the SAC on November 7, 2023. R. Doc. 54. After multiple continuances, the Court set trial for August 25, 2025. R. Doc. 116. The deadline to file all motions, including motions for summary judgment and motions in limine, was July 2, 2025. *Id.* That deadline has now passed and the City did not move for summary judgment. Plaintiffs timely filed the motion at bar, a motion for summary judgment, on June 23, 2025. R. Doc. 124.

Much like the SAC, Plaintiffs' summary judgment motion is unclear. Presumably, Plaintiffs argue because they present a plausible Title VII claim, they should be entitled to summary judgment if the City cannot introduce a non-discriminatory reason for adverse employment action. *Id.* But nowhere in Plaintiffs' motion do they dedicate any argument to specific causes of action. *Id.* The City opens its response with defenses that could afford it complete relief had it moved for summary judgment. R. Doc. 133. It argues: (1) Johnson did not exhaust his

5

administrative remedies because he failed to introduce into evidence his EEOC right to sue letter,[3] (2) some of Plaintiffs' claims are time-barred, and (3) the Court lacks jurisdiction for any allegation not contained in Plaintiffs' EEOC complaints. *Id.* at pp. 1-7. However, because the City does not independently move for summary judgment and these arguments are raised in opposition, such defenses are considered only insofar as they create a genuine dispute of material fact. The City also argues that various factual disputes preclude summary judgment. *Id.* at pp. 7-11. Plaintiffs did not file a reply brief.

## LAW & ANALYSIS

1. **Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court however "construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). "A non-movants' summary

---

[3] Johnson's May 22, 2019, right to sue letter is attached as an exhibit in the original complaint. *See* R. Doc. 1-1 at p. 1

judgment evidence must be taken as true." *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019).

### 2. Race & Sex Discrimination

For race and sex discrimination claims, a plaintiff may establish discrimination directly or indirectly. When the plaintiff brings only circumstantial evidence of discrimination, courts must apply the three-step framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In Step One, the burden rests with the employee to produce evidence supporting a *prima facie* case of discrimination, that she: (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of her protected class. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). In Step Two, the burden shifts to the employer. An employer must show "a legitimate, nondiscriminatory reason for the adverse employment action." *Alkhawaldeh*, 851 F.3d at 426. For Step Three, "[i]f the employer is able to articulate a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." *Id*.

Lummer is not entitled to summary judgment as a matter of law for her race and sex discrimination claims. At best, Lummer presents a genuine dispute of material fact as to whether she has made a *prima facie* case for either race or sex discrimination. First, without evidence of direct racial or sex discrimination, Lummer must point to a similarly situated comparator in nearly identical circumstances to establish that she was treated less favorably than a similarly situated employee outside her protected class. *See, e.g., Spann v. FedEx Freight, Inc.*, No. 24-60318, 2025

7

WL 1938355, at *7 (5th Cir. July 15, 2025) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009)) (failure to identify a similarly situated comparator means a plaintiff cannot make a *prima facie* claim of discrimination); *Jackson v. Univ. of Texs Sw. Med. Ctr.*, No. 3:24-CV-0495-X, 2025 WL 2107997, at *2 (N.D. Tex. July 28, 2025) (same).[4] She does not directly identify a comparator in her summary judgment motion. Presumably this could be the Managers. They are outside of Lummer's protected class as to race and sex. However, it is the plaintiff's burden to make a *prima facie* case of discrimination. *See Smith v. City of St. Martinville*, 575 F. App'x 435, 440 (5th Cir. 2014) (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)) (a plaintiff must at least create a genuine dispute of material fact that she has made a *prima facie* case of discrimination). She has not done so and this alone defeats summary judgment.

Regardless, the City satisfied its Step Two burden by presenting a nondiscriminatory reason for Lummer's termination. With affirmative evidence in her termination letter, then-contemporaneous emailed complaints and sworn declarations, the City's stated reason for Lummer's termination is she "failed to lead effectively, made repeated disrespectful remarks toward her staff, treated staff disrespectfully, failed to heed coaching and counselling sessions, and failed to appropriately handle payroll discrepancies." *See* R. Doc. 135-2 at ¶ 8. These are legitimate, nondiscriminatory reasons for termination. *See, e.g.*, *Shields v. Boys Town Louisiana, Inc.*, 194 F. Supp. 3d 512, 530 (E.D. La. 2016) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007)) (even an incorrect belief an employee made offensive remarks qualifies as a legitimate, non-discriminatory reason for termination); *see also Wallace v. Methodist*

---

[4] In both cases, the plaintiffs' failure to identify a similarly situated comparator meant the defendants were entitled to summary judgment for race and sex discrimination claims. But in this case, the City has not asked for summary judgment in its favor.

*Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (a violation of an employer's written policies that could result in termination is a legitimate, non-discriminatory reason for termination under Title VII). Therefore, the City has satisfied its Step Two burden. Lummer also makes no dedicated argument for Step Three, that the City's reasons for termination are pretextual. *See* R. Doc. 124.

In her motion for summary judgment, Lummer has not satisfied any required element for race or sex discrimination let alone convinced the Court there are no set of facts supporting a legitimate, non-discriminatory termination. She is not entitled to summary judgment.

### 3. Retaliation & Louisiana Whistleblower Statute

To establish a *prima facie* case of retaliation, it is the plaintiff's burden to show "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citation omitted). Retaliation claims are analyzed under the same burden-shifting framework as discrimination claims: "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation[.]" *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citation omitted). "[T]he employee accomplishes [this] by showing that the adverse action would not have occurred but for the employer's retaliatory motive." *Id.* (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

An employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by Title VII, or (2) made a charge, testified, assisted, or participated

9

in any manner in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Plaintiffs need only show that they had "a reasonabl[e] belief that the employer was engaged in unlawful employment practices" not that NORD's employment practices were actually unlawful. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (citation omitted).

In a conclusory fashion, Plaintiffs assert they were subject to retaliation because they made "complaints about the discriminatory treatment of others." R. Doc. 124-4 at ¶ 21; R. Doc. 124-5 at ¶ 34. Lummer contends she complained to CPO Smith about some unspecified discrimination leveled against "ZACK," a gay employee, and NORD's policies investigating sexual harassment claims. *Id.* at ¶ 14. Johnson allegedly complained to Chief of Staff Boudreau, again in an unspecified form, that Lummer was facing discrimination on the basis of her race and sex. R. Doc. 124-5 at ¶ 34. The City disputes Plaintiffs' allegations and contend neither Johnson nor Lummer made any complaints, let alone complained about a discrete, unlawful employment practice. R. Doc. 135-2 at ¶¶ 6, 10. While the Fifth Circuit has not directly addressed the question whether informal complaints can constitute opposition to an informal employment practice,[5] even assuming Plaintiffs' complaints qualify, the City still denies any such complaint was made. *Id.* This at least creates a genuine dispute of material fact as to whether Plaintiffs opposed an unlawful employment practice. Accordingly, Plaintiffs are not entitled to summary judgment on their Title

---

[5] *See, e.g.*, *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 649 (W.D. Tex. 2014) (noting that while the Fifth Circuit has not ruled definitively as to whether informal complaints can constitute an opposition, it concluded the plaintiffs' verbal complaints in this case qualified), *aff'd*, 808 F.3d 266 (5th Cir. 2015) (assuming *arguendo* that such verbal complaints did constitute an opposition but affirming the district court's dismissal of the plaintiff's retaliation claims on summary judgment).

VII retaliation claims.

The same factual dispute precludes summary judgment on the Louisiana Whistleblower Statute claims. The Louisiana Whistleblower Statute provides that: "An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law: (1) [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law[;] (2) [p]rovides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of the law[; or] (3) [o]bjects to or refuses to participate in an employment act or practice that is in violation of law." La. R.S. § 23:967(A). In other words, a plaintiff must have disclosed, testified, objected to, or refused to participate in an unlawful activity. *See, e.g.*, *Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213, 1234-1235. Because the parties genuinely dispute whether Plaintiffs made any complaints and whether NORD's conduct violated state law, the Court cannot conclude at this stage that both plaintiffs objected to some unlawful practice.

### 4. Hostile Work Environment

Under Title VII, a hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Courts analyze state, in this case LEDL, and federal hostile work environment claims under the Title VII standard. *See, e.g.*, *Wilkinson v. Pinnacle Lodging, L.L.C.*, No. 22-30556, 2023 WL 6518142, at *5 (5th Cir. Oct. 5, 2023) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)). To establish a *prima facie* hostile work environment claim under Title VII, a plaintiff must show "(1) membership in a protected group;

11

(2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012). To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment. *West v. City of Houston*, 960 F.3d 736, 741-42 (5th Cir. 2020) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). The conduct must be objectively and subjectively hostile or abusive. *Id.* at 742. Relevant considerations include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with the victim employee's work performance. *Id.*

Plaintiffs point toward alleged derogatory comments and actions by the Managers. Lummer declares that the Managers accused her of being racist, were insubordinate, eavesdropped and taped her meetings, encouraged lifeguards to make false complaints against her, routinely called her "Female Hitler," and conspired to get her fired. R. Doc. 124-4 at ¶¶ 13, 14, 23, 44, 65, 84. Lummer alleges her supervisors, CPO Smith and Interim CEO Wyche, were made aware of this treatment but ratified it by suggesting she make peace with the Managers, only to later fire her for allegedly acting inappropriately to subordinates. *Id.* at ¶¶ 88, 91, 93. She also states her predecessor, another white female, experienced similar harassment by the Managers. *Id.* at ¶ 37.

Johnson's hostile work environment claim mostly piggybacks on Lummer's allegations. R. Doc. 124-5 at ¶ 58. His declaration states the Managers and NORD created a "hostile-work environment in which Lummer was forced to work" and alleges Lummer experienced "workplace

12

challenges." *Id.* at ¶¶ 54, 58. Johnson also claims Reed and Green disparaged Johnson by claiming he was a member of "Club Sandy the female Hitler" and was supporting a "racist white lady." R. Doc. 124-7 at ¶ 9.

The City argues a jury could conclude Lummer was not subjected to a hostile work environment because Lummer's conduct, not sex or race discrimination, was the cause of any hostility between Lummer and the Managers. R. Doc. 135 at pp. 8-9. Also, the City claims both plaintiffs have offered no evidence to support element five, suggesting NORD was negligent in failing to discover or remedy harassment by the Managers. *Id.* The Court agrees that Plaintiffs are not entitled to summary judgment.

Starting with Johnson's claim, he does not put forward undisputed evidence to suggest his harassment was severe and pervasive, element four. The only evidence of harassment directed at Johnson are complaints of ridicule—that he was a member of "Club Sandy the female Hitler" or supported a "racist white lady." R. Doc. 124-7 at ¶ 9. Plaintiffs do not allege how often Johnson's teasing occurred, whether it was accompanied by any physically humiliating conduct, or whether could not perform his work duties. As such, even assuming this teasing occurred, a jury could conclude such ridicule was isolated. "[I]solated incidents (unless extremely serious)" cannot support a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). Plaintiffs also make no allegation that these comments by themselves are egregious or extremely serious. They cannot. "[S]imple teasing, [and] offhand comments . . . will not amount to discriminatory changes in the terms and conditions of employment" because "Title VII . . . is not a general civility code[.]" *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (citations omitted). Accordingly, Johnson is

13

not entitled to summary judgment.

Lummer's hostile work environment claim is better supported but also does not warrant summary judgment. She contends the Managers spied on her, repeatedly accused her of being racist while disparaging her because of her race, and encouraged others to make false complaints to get her fired. *Id.* at R. Doc. 124-4 at ¶¶ 13, 14, 23, 44, 65, 84. However, the City disputes Lummer was harassed with competent summary judgment evidence. In fact, the City argues Lummer harassed the Managers. Multiple emails and statements, made by the Managers during Lummer's employment in 2018, support this account, and they accuse Lummer of various comments including "I [Lummer] know [my comments] hurts your feelings and I'm going to keep on doing it" and that she would "strangle the life out of" a manager for insubordination. *See*, e.*g.*, R. Docs. 135-5, 135-6.

The City's evidence creates a genuine dispute of material fact as to element two, harassment, including whether Lummer was subjected to any harassment or was, rather, the instigator. When genuine disputes of material fact exist as to the totality of the circumstances in a hostile work environment claim, the issue is "best left for the triers of fact to determine after all testimony has been heard and all evidence presented." *Wilson v. Laitram Corp.*, 131 F.Supp.2d 826, 835 (E.D. La. 2001). This "weighing the evidence . . . [is] appropriately done by the trier of fact[,]" not by summary judgment. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005). The City also sufficiently disputes element five, that NORD was negligent in addressing any harassment, because NORD supervisors allegedly facilitated a meeting between Lummer and the Managers to mediate any conflict. R. Doc. 135-11. Such factual disputes prevent the Court from granting summary judgment. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment, R. Doc. 124, is **DENIED**.

New Orleans, Louisiana, this 5th day of August 2025.

                                                                          GREG GERARD GUIDRY
                                                    UNITED STATES DISTRICT JUDGE